IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Building Trades Pension Fund of
Western Pennsylvania by Norman L. Ringer, Jr. and
William J. Clair in their representative
capacities as Trustees,

                Plaintiffs,

v.

Zenith American Solutions, Inc.

                Defendant.

_____

Case No. 2:25-589

## COMPLAINT

Plaintiffs the Building Trades Pension Fund of Western Pennsylvania, by Norman L. Ringer, Jr. and William J. Clair in their representative capacities as Trustees of the Fund (collectively, the "Fund" or "Plaintiffs") through their undersigned counsel, submit this Complaint against Defendant Zenith American Solutions, Inc., ("Zenith" or "Defendant"), and allege as follows:

### PRELIMINARY STATEMENT

1. The Plaintiff Fund is a multiemployer pension plan as defined at Section 302(c)(5) of the Labor-Management Relations Act ("LMRA") and is tax-qualified under Section 401 of the Internal Revenue Code ("IRC"). The individual named Plaintiffs are Trustees of the Fund, duly appointed as provided in the trust agreement under the terms of which the Fund was created and operates, are fiduciaries of the Fund, and so have standing to bring this action on behalf of the Fund.

2. During its operation and as described below, Plaintiffs retained the services of Defendant to serve as the Fund's Third-Party Administrator ("TPA"). In that capacity, and among other things, Defendant was obligated to adjudicate claims for benefits payable under the Fund's plan of benefits, and to make payment in accordance with the Fund's plan document.

3.  Since at least January 1, 1976, the Fund's plan document (as amended from time to time) has provided that payment of benefits for a given month is to be made on the first day of each calendar month.

4.  In a review of plan operations conducted in 2021 it was determined that at some point prior to 1989 (during the tenure of Defendant's predecessor TPA, who Defendant acquired on September 1, 2017), the Fund began to pay benefits on the *last* day of the calendar month, rather than the first. This procedure – which is not consistent with the Fund's plan document – continued after Defendant became the Fund's TPA.

5.  The failure to pay benefits in accordance with the Fund's plan of benefits constituted a potential operational failure as defined in the IRC and regulations thereunder, which could expose the Fund to loss of its tax qualified status, and the fiduciaries of the Fund to breach claims and penalties.

6.  The Internal Revenue Service ("IRS") maintains a revenue procedure by which operational failures can be brought voluntarily to the IRS's attention with proposed corrections – the Voluntary Compliance Program ("VCP") – and provides for favorable relief from the potential consequences that apply to non-corrected failures that are found by the IRS on audit.

7.  On December 30, 2021, the Fund brought a petition for relief to the IRS under the VCP with regard to the incorrect payment of benefits described in Paragraph [9].

8.  In 2020 the Trustees of the Fund adopted an 11th Amendment to the plan document making benefits payable on the last day of the month. This was an element of the Fund's voluntary effort to correct the operational defect and was an interim step intended to align operations and documentation.

9.  The IRS, in adjudicating the Fund's VCP petition, determined that (1) changing the benefit payment date by amending the plan document was not an adequate corrective action, and (2) that participants and beneficiaries of the Fund were entitled to receive interest payments calculated

based on the time-value difference between receiving their benefits on the last rather than first day of each month in which they were entitled to receive a benefit.

10. The Fund therefore adopted a 15th plan amendment to restore the first of the month payment obligation.

11. The Fund calculated the interest owed to the affected participants and beneficiaries. The gross amount of that obligation payable by the Fund is presently $2,404,919.45. This amount was paid to the affected participants in March 2025.

12. Payment of the interest amount to affected participants and beneficiaries was solely caused by Defendant's failure to operate its responsibilities as TPA in accordance with the plan document and represents a loss to the Fund (together with associated costs and attorneys' fees) that it should not have incurred. Plaintiffs bring this action to recover that loss.

## PARTIES

13. Plaintiff, the Building Trades Pension Fund of Western Pennsylvania, is a multiemployer pension plan with its principal place of business in Allegheny County, Pennsylvania.

14. Plaintiff Norman L. Ringer, Jr. is a Trustee of the Building Trades Pension Fund of Western Pennsylvania and appears in this action in his representative capacity as a Trustee, only.

15. Plaintiff William J. Clair is a Trustee of the Building Trades Pension Fund of Western Pennsylvania and appears in this action in his representative capacity as a Trustee, only.

16. Defendant Zenith American Solutions, Inc., is a Florida corporation, headquartered at Two Harbor Place, 302 Knights Run Avenue, Suite 1100, Tampa, Florida, 33609.

## JURISDICTION AND VENUE

17. Pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331, this Court has jurisdiction over the claims asserted in this Complaint.

18. The Court has personal jurisdiction over Zenith because, at all times relevant to the claims asserted herein, Zenith conducted business in the Commonwealth of Pennsylvania within the

meaning of the Pennsylvania Long-Arm Statute, 42 Pa. Consol. Stat. Ann. § 5322. Zenith's contacts with the Commonwealth of Pennsylvania include, but are not limited to:

a. Maintaining a place of business at 603 Stanwix Street, Two Gateway Center, Suite 1500, Pittsburgh, PA 15220.

b. Entering into Administrative Services Agreements with various multiemployer benefit plans administered and residing in the Commonwealth of Pennsylvania, including Plaintiffs.

c. Providing the participants, dependents and beneficiaries of Plaintiffs the administrative services contemplated by the terms of the Administrative Services Agreement entered into between Zenith and Plaintiffs.

19. By the actions recited in Paragraph 18, (a) – (c), Zenith has purposefully availed itself of the privilege of conducting business within the Commonwealth of Pennsylvania.

20. Zenith has previously been sued in this District and did not object to jurisdiction or venue.

21. For the reasons stated above, venue is also proper in this District pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b)(2).

## BACKGROUND

22. The Fund's plan document provides that the Fund's Board of Trustees shall administer the Fund and that "the details of administering the Plan may be vested by the Board of Trustees in an administrator/manager appointed by the Board of Trustees to serve at its will." *Plan Document*, Art. IX, § 9.01(a).

23. By the formulation permitting the vesting of "the details of administ[ration]" in a person other than the Board of Trustees, the Fund's plan document distinguishes between a supervisory administrative role, and a working administrative role.

24. Plaintiffs and Zenith entered the *Administrative Services Agreement* effective May 13, 2019.

25. Plaintiffs' principal purpose in entering the *Agreement* was to obtain from Zenith the performance of "certain third party administrative services on behalf of the Fund". Zenith is therefore defined under the *Agreement* to be the "third party administrator" or "TPA" of the Fund and, by accepting that status, became the working administrator contemplated by the Fund's plan document.

26. Zenith agreed to perform a broad scope of administrative services under the umbrella of four distinct roles stated in the *Agreement*: (A) General Administration Services, (B) Financial Administration Services, (C) Contribution Accounting Services, and (D) Pension Administration Services.

27. The categories effectively contemplate all activities that could be considered to fall within the administrative tasks required to operate the Fund. The Board of Trustees retained only supervisory administrative function with regard to these categories of activities. Put another way, those fiduciary functions were contractually delegated to Zenith.

28. The *Agreement* describes these services as "administrative and clerical in nature" and purports to disclaim for Zenith the role of "plan administrator" "as the term is defined in . . . ERISA)."

29. ERISA § 3(16) defines the term "administrator" to mean "the person specifically so designated by the terms of the instrument under which the plan is operated." As seen, the Fund's plan document defines its "administrator" to include a working administrator, like Zenith, as appointed by the Board of Trustees.

30. The recitation in the *Agreement* is therefore at odds with the plan document and with ERISA.

31. Zenith was, as soon as the *Agreement* was made effective, the working "plan administrator" of the Fund and remained so at all times relevant to this action.

32. The United States Department of Labor, in its regulations issued under ERISA with respect to the statute's fiduciary responsibility provisions, considers certain positions held by persons

with respect to ERISA-governed benefit plans to by their nature confer fiduciary status on the holder. One such position is "administrator". 29 C.F.R. § 2509.75-8.

33.    As plan administrator Zenith was, at all times relevant to the claims made in this Complaint, a fiduciary to the Fund with respect to, at least, the specific administrative functions delegated to it under the *Agreement*.

34.    Insofar as the *Agreement* attempts to relieve Zenith of its fiduciary responsibilities, that provision of the *Agreement* is void as against public policy and is of no force or effect in defining the fiduciary duties owed to the Fund by Zenith.

35.    Other provisions of the *Agreement* clarify that the effort to disclaim "plan administrator" status is at odds with the very services Zenith undertook to perform in accordance with express representations and warranties given by Zenith, including:

> The TPA represents and warrants that it and the staff employed by the TPA have the skill and knowledge possessed by well-informed members of the industry, trade or profession, and that it and its staff will apply that skill and knowledge with care and diligence to perform its duties in a professional manner and in accordance with standards prevalent in the TPA's industry, trade or profession.

36.    The "standard prevalent in the TPA's industry" is that of ERISA § 404(a)(1)(B) so that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participant and beneficiaries, and":

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

37.    Among the specific obligations Zenith undertook under the umbrella of "Pension Administrative Services" was to "[p]erform all functions relative to payment of retirement benefits in accordance with Fund documents." Zenith was required, as a prudent fiduciary, to make payment of

benefits to participants and beneficiaries of the Fund only in accordance with the terms of the plan document.

38. Instead, as described above at Paragraphs 4 - 12, Zenith adjudicated benefit claims and paid benefits out of plan assets in a manner not in accordance with the Fund's plan document. This fact has been adjudicated and determined by the United States Department of Treasury, Internal Revenue Service, TE/GE, and the Court may take notice of that administrative determination.

39. Under ERISA, the duties owed by fiduciaries to plan participants and beneficiaries are those of trustees of an express trust – the highest known to the law.

40. Even were Zenith's status as plan administrator and its attendant fiduciary obligations not created by reference to the *Agreement*, Zenith is also a functional fiduciary.

41. Under ERISA, fiduciary status is tested by reference to the control and discretion that a person exercises over a plan, rather on that person's title. Under the functional test approach, fiduciary status extends so far as the person's control over fiduciary acts related to the plan.

42. Zenith had at all relevant times, sole control over the determination and payment of retirement benefits in accordance with the Fund's plan document. Functionally, Zenith is a fiduciary with regard to the determination and payment of benefits under the plan document during the term of its service as TPA to the Fund.

43. Zenith has breached its fiduciary duties by approving and paying claims for pension benefits in a manner inconsistent with the Fund's plan document.

## COUNT ONE
### Breach of Fiduciary Duty under ERISA
### (29 U.S.C. §§ 1104(a) and 1109(a))

44. Plaintiffs reallege and incorporate by reference each and every allegation contained herein.

45. Plaintiffs bring this Count One under 29 U.S.C. §§ 1132(a)(2), (a)(3), 1104(a), and 1109(a). Plaintiffs have standing to bring this Count One under these provisions as ERISA fiduciaries.

46. As the Fund's administrator Zenith is an ERISA fiduciary and thus owes the Fund and its participants and beneficiaries a fiduciary duty to discharge its obligations to them "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims. 29 U.S.C. § 1104(a)(1)(B).

47. Zenith also owed a separate and independent fiduciary duty to discharge its obligations in accordance with the terms of the Fund's plan document(s). 29 U.S.C. § 1104(a)(1)(D).

48. Zenith breached its fiduciary duties as set forth herein.

49. Zenith's breaches resulted in improper payments of benefits on behalf of the Fund.

50. Zenith's breaches obligated Plaintiffs to apply for relief with the IRS under the terms of its Voluntary Fiduciary Correction Program ("VFCP"), and to incur (1) the costs associated with completing the VFCP process to IRS's satisfaction, (2) the costs associated with restoring to all affected Fund participants and beneficiaries their properly adjudicated benefits going forward, and (3) the costs of interest amounts payable to affected participants and beneficiaries as ordered by IRS in its adjudication of Plaintiffs' VFCP application.

51. Zenith has profited an undetermined amount due to its breach of its fiduciary duties.

52. Accordingly, Plaintiffs seek the recovery of (1) any and all losses/costs resulting from Zenith's breach of its fiduciary duties, (2) the recovery of any and all benefits or profits Zenith made as a result of its breach of its fiduciary duties, (3) all such other equitable or remedial relief as may be appropriate, and (4) the recovery of Plaintiffs' attorneys' fee and costs.

**COUNT TWO**
**BREACH OF CONTRACT**
**(Under the Laws of the Commonwealth of Pennsylvania**
**and 28 U.S.C. § 1367(a))**

53. Plaintiffs reallege and incorporate by reference each and every allegation contained herein.

54. Plaintiffs bring this Count Two under the Laws of the Commonwealth of Pennsylvania.

55. Count Two is properly before the Court in the exercise of its supplemental jurisdiction as defined at 28 U.S.C. § 1367(a), because the claim made is so related to the claim (Count One) within the Court's original jurisdiction that it forms part of the same case and controversy between Plaintiffs and Defendants.

56. The *Administrative Services Agreement* was at all relevant times a valid and enforceable express bilateral contract between Plaintiffs and Defendant.

57. Plaintiffs, without exception, fully performed each and every duty required of them under the terms of the *Agreement*.

58. By failing to pay benefits to the Fund's participants and beneficiaries in accordance with the terms of the Fund's plan document, Defendant repeatedly materially breached its contractual duty to "[p]erform all functions relative to payment of retirement benefits in accordance with Fund documents".

59. Plaintiffs were damaged by Defendant's breach of its contractual duties by, at least, incurring the costs and attorneys' fees associated with the Fund's petition for relief to IRS under its VCP program and by the requirement to repay its affected participants and beneficiaries interest of not less than $2,404,919.45.

60. Accordingly, Plaintiffs seek the recovery of (1) any and all losses/costs resulting from Zenith's breach of its contractual duties as described herein, (2) the recovery of any and all profits Zenith made as a result of its breach of its contractual duties, (3) all such other equitable or remedial relief as may be appropriate, and (4) the recovery of Plaintiffs' attorneys' fee and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court issue a final judgment:

a. That Defendant breached its fiduciary duties to the Fund, and ordering Defendant to reimburse Plaintiffs for any and all losses resulting from Defendant breaching its fiduciary duties.

b. That Defendant breached its contractual duties owed to the Fund under the terms of the *Administrative Services Agreement*, and ordering Defendant to pay such damages, including costs and attorneys' fees, as are attributable to the breach of Defendant's duties.

c. Granting all such other equitable or remedial relief as the Court may deem appropriate; and

d. Ordering Defendant to pay Plaintiffs' their attorneys' fees and costs incurred in bringing this action.

Dated: April 30, 2025

*/s/Paul M. Newcomer*
Paul M. Newcomer
State Bar of Michigan (MI) No. P44501

*/s/Levi K. Logan*
Levi K. Logan
Pa. I.D. #206348

Logan, Mettley & Newcomer, PLC
5 Hot Metal Street, Ste. 203
Pittsburgh, PA 15203
